UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DANIEL DEMARY ET AL** | **CASE NO. 2:22-CV-00792** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **FREEDOM TRUCKS OF AMERICA L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is "Plaintiffs' Motion to Exclude the Expert Opinions of Defendant's Expert Witness Pablo Sanchez Soria PHD, CIH" (Doc. 66) as inadmissible.

## BACKGROUND

On February 22, 2021, Justin Demary was working for Freedom Trucks of America, LLC ("Freedom Trucks"). He was asked to wash out a tank truck owned by Freedom Trucks. It appears that there is a dispute as to whether Justin was asked to wash the tank truck, or he entered the tank truck of his own volition, or at the behest of his friend and co-worker, Dustin Wynn. Justin and Wynn were unaware that the tank truck had been purged with nitrogen at the Vopak Terminal Deer Park facility ("Vopak Terminal") because no warning tag was placed on the tanker by Vopak North America, Inc. ("Vopak"). Again, this is a disputed fact; a Vopak employee has testified that he did place a warning tag on the tank truck.[1] Vopak operates a storage facility at which Freedom Truck had a liquid chemical cargo removed from the tanker about a month before Justin's accident. The tanker

---

[1] Defendant's exhibit D, Max Limon Deposition, p. 28:12-21.

was then transported back to Freedom Truck's yard on or about January 27, or January 28, 2021, where it sat dormant until the date of the accident.[2]

Justin entered the tanker to perform the task but could not breath. He passed out and died of asphyxiation. Justin's parents and only heirs, Daniel and Tammy Demary, have filed this wrongful death action against several Defendants for the death of their son.

Vopak Terminal has hired Dr. Soria as an expert toxicologis/pharmacologist who is anticipated to testify that the level of cannabinoids and THC metabolites in Justin's blood far exceeded the threshold for impairment.[3] As such, Justin's alleged impairment contributed to his decision to enter the tanker and his ultimate death.

## LAW AND ANALYSIS

Vopak's defense in this case that that Justin's death was caused by his own negligence and by the negligence of his employer, Freedom Trucks. Dr. Soria was hired to determine the extent to which consumption of THC containing products (i.e. cannabis, marijuana) may have impaired Justin while at work. Dr. Soria opines as to the following in his report:

> 1. The use of cannabis is associated with impaired cognitive function and physiological response, including impairments in decision-making, risk-taking, balance, coordination, reaction time, spatial perception which may increase the risk of being involved in an accident due to impaired cognitive and motor skills. These impairments are associated with blood concentrations of cannabis and its metabolites in a dose-dependent manner.
>
> 2. The presence and concentration of cannabis and its metabolites, 11-OH-THC in Mr. Demary's blood sample results are useful indicators that he would have recently consumed (inhaled or ingested) cannabis.

---

[2] Defendant's exhibit C, Expert Report of Ray Commander, p. 4.
[3] Plaintiff's exhibit B, pp. 4-5.

> 3. Mr. Demary's employer did not properly establish industrial hygiene measures to control workplace hazards, highlighting a disregard for established safety protocols and the well-being of their employees.[4]

Plaintiffs argue that Dr. Soria is not qualified, and not a medical toxicologist as he has no relevant training, experience, or expertise related to medical toxicology and the effects on the human body. Plaintiffs also posit that Dr. Soria has not demonstrated that he has any knowledge, education, or experience with confined spaces to render expert opinions as to the actions or omissions of Justin's employer, Freedom Trucks. Plaintiffs also argue that Dr. Soria's opinions constitute inappropriate conclusory statements with no supporting evidence. Specifically, Plaintiffs complain that Dr. Soria's opinions are not based on sufficient data or facts, thus they are unreliable and speculative. Plaintiffs request that the Court exclude Dr. Soria's testimony related to cannabis and workplace deficiencies at Freedom Trucks pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert*.

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the

---

[4] Plaintiff's exhibit A, Expert Report of Pablo Sanchez Soria, PhD, CIH, pp. 4-5.

expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[5] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

*Qualifications*

Plaintiffs argue that Vopak cannot meet its burden to show that Dr. Soria has the requisite qualifications to opine on medical toxicology and the alleged impairment due to cannabis use. Plaintiffs point out that Dr. Soria's education was focused on pharmacology

---

[5] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

and toxicology, but he is not a medical doctor, nor has the disclosed any specific training on medical toxicology or the effects of cannabis on the human body and any allege impairment, including the timing element in his second opinion. Plaintiffs note that Dr. Soria has not authored any publications nor made any presentations regarding cannabis and its effect.

Dr. Soria is a Senior Toxicologist and Director of Health Sciences at CTEH® specializing in risk and exposure assessment, toxicity evaluations, emergency response toxicology, and in evaluating relationships between chemical exposure and disease causation.[6] He has a double major in microbiology and nutritional sciences and a PhD in pharmacology and toxicology. He has been involved in the practice of toxicology and industrial hygiene and has specialized in quantitative exposure reconstruction of occupational and environmental hazards.[7]

Dr. Soria has served as a consulting toxicologist[8] and industrial hygienist, and has developed plans to protect workers and communities from chemical exposure. Additionally, as a practicing toxicologist, he has evaluated the impairment and risk-perception impacts associated with the use of alcohol, and recreational, illicit and prescription drugs.[9] He routinely conducts disease causation analysis by evaluating the scientific evidence relating chemical exposures to human diseases according to the

---

[6] Defendant's exhibit B, Soria expert report, p. 3.
[7] Id.
[8] Toxicology, a blend of biology, chemistry, and medicine, is the science of the adverse effects of substances on biological systems. Toxicology studies the dose-response of chemicals on biological systems, with emphasis on understanding the mechanisms of harmful effects. *Id.* pp. 3-4. See also See *Toxicology*, National Institute of Environmental Health Sciences (Last Accessed November 24, 2024) https://www.niehs.nih.gov/health/topics/science/toxicology.
[9] *Id.*

methodology of toxicological causation analysis. Dr. Soria's curriculum vitae lists numerous publications and presentations related to the study of toxicology, several of which relate to the effects of toxicants on the human body.[10] Defendants remark that Dr. Soria's opinions regarding cannabis use and timing relate to principles of pharmacokinetics and pharmacodynamics (known as the two pillars of pharmacology).[11]

Dr. Soria reviewed the NMS Labs toxicology report that established that Justin's blood levels of THC were reported to be 9.9 ng/mL. Dr. Soria concluded that it was more likely than not that Justin was suffering from motor and cognitive impairments that may have contributed to his demise as a result of poor decision making. His report seeks to provide insight into effects that the specific amount of THI discovered in Justin's bloodstream would likely have had on his body and mind while conscious, but makes no effort to challenge medical opinions or the cause of Justin's death. The Court finds that Dr. Soria is qualified to testify as an expert as to the effect of THC on the mind and body.

*Relevancy*

Even if a witness qualifies as an expert under *Daubert,* the expert's testimony must still satisfy the relevancy test of Federal Rule of Evidence 401, and the balancing test of Federal Rule of Evidence 403. See *Granger v. Bisso Marine*, U.s.Dist. LEXIS 119868, at *14 (E.D. La. Sept. 6, 2016) (citing *United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995)).

---

[10] Defendant's exhibit F, CV of Pablo Sanchez Soria.
[11] *Id.*; Defendant's exhibit G, Declaration of Dr. Soria, ¶ 7.

Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Federal Rule of Evidence 401. Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Federal rule of Evidence 403. However, the scope of Rule 403 is quite narrow, and it should be applied to exclude evidence only cautiously and sparingly. See e.g., *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007), *cert. denied*, 552 U.S. 1144 (2008); see also *Alanis v. Tracer Indus. Mgmt. Co.*, 2016 U.S. Dist. LEXIS 110400, at *6 (E.D.Tex Aug. 18, 2016). Indeed, "unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party." *Brazos River Auth. V. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006). "Virtually all evidence is prejudicial; otherwise, it would not be material. The prejudice must be unfair." *Id.*

Defendants argue that Dr. Soria's testimony is relevant because the evidence and facts—lab results, autopsy reports, testimony relating to marijuana use and chemical inhalation, etc.—involve complicated scientific issues, which, if brought before a jury without further explanation, are highly likely to leave the trier of fact confused and unable to reach a well-informed conclusion. Hence, Dr. Soria's testimony is necessary to assist a jury in understanding that based upon science, the level of cannabinoids in a human system can make one impaired and have poor judgment. Defendants note that precedential authority almost unanimously vouches for the admission of a toxicologist's testimony to

assist the trier of fact in understanding complex topics rooted in science, especially toxicology. Defendants cite to numerous cases that have held that evidence of impairment is relevant, admissible, and important to the issue of contributory negligence. See *Harris v. Kubota Tractor Corp.*, 2006 U.S. Dist. LEXIS 73510, *8 (W.D. La. 2006); *Ballou v. Henry Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981); *Durham v. County of Maui*, 742 F.Supp.2d 1121, 1130 (D. Haw. 2010); *Javernick v. U.S. Xpress, Inc.*, 2007 U.S. Dist. LEXIS 57082, *4 (W.D. Tex. Austin Div. 2007); *Grejeda v. Vail Resorts, Inc.*, 2022 U.S. Dist. LEXIS 218431, *55 (D.Vt. Dec. 5, 2022); *FTS Int'l Servs., LLC v. Patterson*, 2020 Tex. App. LEXIS 6851, *22 (Tex. App. 12th Cir. 2020).

Additionally, Defendants cite to numerous cases in which toxicologists are routinely allowed to testify about failed drug tests and the impairment of the drug-user. See *Bocanegra v. Vicmar Servc.*, 320 F.3d 581, 587 (5th Cir. 2003); *Owens v. Concrete Pipe & Prods. Co.*, 125 F.R.D. 113, 114-115 (E.D. Pa. 1989); *Howard v. Offshore Liftboats, LLC*, 2016 U.S.Dist. LEXIS 11372, *9 (E.D. La. 2016); *Cain v. Jefferson Parish Dep't of Fleet Mgmt.*, 701 So.2d 1059, 1016 (5th Cir. 1997).

Defendants also note that Justin's supervisor, Mark Francis, testified that Justin was never directed to enter the tank, and that 90 percent of tank cleanings are never done on the interior.[12] Bryce Doucet testified as to the obvious unsafe conditions of the tank that Justin decided to enter and stated that even stooping over it, it would take your breath away.[13] Considering this testimony, it appears that Defendant is attempting to show that Justin

---

[12] Defendant's exhibit E, Mark Francis deposition, pp. 12:25; 13:1-4: 18:20-25;19:1-3.
[13] Defendant's exhibit I, Bryce Doucet deposition, pp. 156:21-157:1.

entered the tank of his own volition, entering the tank was a departure from protocol, and collectively revealed a pattern of erratic and irrational decision making by Justin. The Court finds the Dr. Soria's opinion as to Justin's levels of THC and possible impairment is relevant.

*Reliability*

Plaintiff argues that Dr. Soria's opinions as to Justin's cannabis use and timing are inadmissible because they are based on unreliable and incomplete information.

Plaintiffs complain that Dr. Soria does not reference Justin's height, weight, or body habitus to discuss the effects that could have occurred in Justin due to cannabis ingestion, nor can he suggest the timing as to when Justin ingested cannabis. Plaintiffs fault Dr. Soria for the lack of evidence to establish the timing and as such, argues that Justin's cannabis impairment cannot be verified. Plaintiffs also note that cannabis is not listed on the death certificate as a cause of death in the autopsy.[14]

Plaintiffs also complain that Wynn's testimony does not establish when Justin may have used cannabis, and also faults Dr. Soria for not making any connection of Justin's cannabis use with any issues with decision-making, risk-taking, balance, coordination, reaction time, spatial perception, or impaired cognitive and motor skills.[15]

Defendants suggest that Dr. Soria's opinions as to timing is supported by science buttressed by scientific studies and other published works and is based upon the Calcasieu Parish Forensic Facility and Coroner's Office Autopsy Report, Justin's birth and death

---

[14] Plaintiffs' exhibit C.
[15] See Plaintiffs' exhibit A.

certificates, NMS Labs Toxicology Report,[16] Cacasieu Public Safety Communications 911 Information Request Form, Communications Event report, miscellaneous photographs, and the deposition testimony of Wynn, Brad Nelson,[17] and Bryce Doucet.

Defendants remarks that the countless cited scientific methods can be applied to the facts of this case, and Dr. Soria details how the science of toxicology can tie together various case materials to offer a viable explanation for Justin's behavior at the time of the incident. For example, the 9.9ng/mL figure from NMS Labs results is in excess of the 2-3 ng/mL that has been scientifically shown to indicate impairment that affects perceptual motor control and critical thinking tasks.[18] Defendant explains that Dr. Soria's education and experience as a pharmacologist and toxicologist, coupled with the scientific methods, allowed Dr. Soria to interpret the blood test evidence to determine that it was "more likely than not that [Justin] had consumed THC-containing products within 1-4 hours prior to his death.[19] Additionally, Wynn and Doucet attested to the fact that Justin was on the job at the time of his death to establish the 1-4 hour time window, thus given the high amounts of THC found to have been consumed, the science suggests he was impaired as a result of his marijuana consumption while at work.[20]

The Court finds that Dr. Soria's opinions are supported by peer-reviewed scientific studies and facts such as the lab results and deposition testimony. As such, a rigorous

---

[16] This report provides the results of the blood analysis and show s the exact amount of THC found in Justin's blood system, post-mortem.
[17] Wynn and Nelson's deposition testimony details the dangerous condition inside the tank and Justin's frequent use of cannabis.
[18] Defendant's exhibit B. p. 18.
[19] *Id.*
[20] *Id.* p. 17.

cross-examination would be the proper vehicle to challenge Plaintiffs' objections as opposed to excluding the expert's testimony. Accordingly,

**IT IS ORDERED** that the Plaintiffs' Motion to Exclude the Expert Opinions of Defendant's Expert Witness Pablo Sanchez Soria PHD, CIH" (Doc. 66) is **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 6th day of December, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**